1

2                                                    **E-Filed 7/6/10**

3

4

5

6

7

8

9

10                    **IN THE UNITED STATES DISTRICT COURT**

11                **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12                              **SAN JOSE DIVISION**

13   TUNG TAI GROUP, a California corporation,      Case Number C 08-5370 JF

14        Plaintiff and Counterclaim Defendant,     **ORDER[1] DENYING DEFENDANTS'**
                                                     **MOTIONS TO VACATE ORDER**
15             v.                                    **GRANTING SUMMARY**
                                                     **JUDGMENT**
16   AARON OBLON, DEVONSHIRE METALS
     CORP., HASMUKH D. PATEL, and DOES 1-500,        [re: doc. nos. 45 and 50]
17
          Defendants and Counterclaimants.
18

19

20        Defendants Aaron Oblon ("Oblon") and Hasmukh D. Patel ("Patel") (collectively, the

21   "Moving Defendants") move to vacate this Court's order of April 12, 2010 granting summary

22   judgment in favor of Plaintiff Tung Tai Group ("Plaintiff").  Plaintiff opposes the motions.  The

23   Court has considered the moving and responding papers, declaration and exhibits, and the oral

24   arguments of Oblon, Patel, and Plaintiff's counsel presented at the hearing on June 18, 2010.  For

25   the reasons discussed below, the motions will be denied.

26   //

27   _____

28        [1] This disposition is not designated for publication in the official reports.

1

## I. BACKGROUND

2   The instant action arises out of a series of transactions between Plaintiff and Defendants

3   Devonshire Metals Corporation ("Devonshire Metals"), Oblon, and Patel (collectively,

4   "Defendants").  Plaintiff is a buyer, seller, and recycler of scrap materials, including metal.

5   (Chen Decl. in Support of Plaintiff's MSJ ("Chen Decl.") ¶ 1.)  Between February and July 2008,

6   Plaintiff and Defendants engaged in a series of contracts in which Plaintiff agreed to purchase

7   steel scrap from Defendants.  (Chen Decl. ¶ 2-11.)  Plaintiff alleges that Defendants failed to

8   deliver the materials despite receiving payments for them.

9   On September 9, 2008, Plaintiff filed suit, alleging that Defendants were liable for breach

10  of contract, fraud, and conversion.  During the same month, Devonshire Metals' operations

11  suffered serious damage as a result of Hurricane Ike. (Oblon Decl. ¶ 23.)  As a result of that

12  damage, Devonshire Metals filed for Chapter 7 bankruptcy protection.  (*Id.* at ¶ 25).  Although

13  Plaintiff received notice as a debtor presumably with respect to Defendants' counterclaims in the

14  instant action, it did not make a claim in the bankruptcy proceedings.  (*Id.*)  Defendants retained

15  the law firm of Manatt, Phelps & Phillips, LLP ("Manatt") to represent them in the instant action

16  and retained separate counsel for Devonshire Metals in the bankruptcy matter.  (*See Birkheimer*

17  Decl. in Support of Plaintiff's Opp'n to Mot. to Vacate ("Birkheimer Decl."), Ex. A.)

18  In May 2009, Manatt moved to withdraw as Moving Defendants' counsel of record,

19  citing "irreconcilable differences".[2]  (*See* Docket No. 26.)  The Court granted that motion on May

20  26, 2009, but directed Plaintiff to continue to serve papers on Manatt until Moving Defendants

21  either obtained new counsel or filed notice(s) to appear *pro se*.  At a case management

22  conference on July 24, 2009, Manatt appeared and represented that it had been unable to

23  communicate with Defendants.  The Court then directed Manatt to provide Moving Defendants'

24  most recent contact information to Plaintiff.  Later that day, Manatt emailed Plaintiff's counsel,

25  providing the required information, including active email addresses for Oblon and Patel.

26

27  ─────────────

28  [2]  At the hearing on the instant motions, Oblon represented that the relationship with Manatt broke down because of a dispute over legal fees.

1    (Birkheimer Decl. Ex. A.)  Manatt also stated that "I believe you already have contact

2    information for Devonshire's BK counsel [bankruptcy counsel] . . . ." (*Id.*)

3          Plaintiff proceeded with the instant action.  On September 1, 2009, Plaintiff served Oblon

4    with its first set of requests for admissions ("RFAs"), using at the last known address provided by

5    Manatt.[3]  (Birkheimer Decl. ¶ 4 and Ex. B.)  Oblon did not respond to the RFAs within thirty

6    days.  On February 12, 2010, Plaintiff moved for summary judgment, again serving Moving

7    Defendants at their last known addresses.[4]  (Docket No. 39.)  A hearing on the motion was set for

8    April 16, 2010.  Oblon acknowledged having received an email from Plaintiff's counsel at about

9    that time.  After receiving no opposition to the motion for summary judgment from either Oblon

10   or Patel, the Court vacated the scheduled hearing and granted the motion in an order dated April

11   12, 2010.  On April 26, 2010, Oblon moved to vacate that order.  Patel filed a similar motion on

12   May 12, 2010.

13                      **II. DEFENDANTS' MOTIONS TO VACATE**

14         The instant motions apparently are brought under Fed. R. Civ. P. 60, which governs relief

15   from a judgment or order.  Rule 60(b) provides that "a court may relieve a party or its legal

16   representative from a final judgment, order, or proceeding" for any of several reasons, including

17   "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  Moving

18   Defendants claim that their failure to oppose Plaintiff's motion for summary judgment was the

19   result of excusable neglect.  Plaintiff contends that Defendants must show "'extraordinary

20   circumstances which prevented or rendered [them] unable to [participate in their case].'" *Cmty.*

21   *Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002) (quoting *Martella v. Marine Cooks &*

22   *Stewards Union*, 448 F.2d 729, 730 (9th Cir. 1971) (per curiam)).  However, the "extraordinary

23   circumstances" test applies only under Rule 60(b)(6).  Under Rule 60(b)(1), excusable neglect

24   "'encompass[es] situations in which the failure to comply with a . . . deadline is attributable to

25

26          [3] At the hearing on the instant motions, Plaintiff's counsel indicated that he also
27   transmitted the RFAs to Oblon's email address.

28          [4] Plaintiff's counsel also indicated that he transmitted Plaintiff's summary judgment
     papers by email to Oblon and Patel.

                                          3

1   negligence,' [citation], and includes 'omissions caused by carelessness, [citation].'" *Lemoge v.*

2   *United States*, 587 F.3d 1188, 1192 (9th Cir. 2009)  (quoting  *Pioneer Inv. Servs. Co. v.*

3   *Brunswick Assocs.*, 507 U.S. 380, 394, 388 (1993)).

4          "To determine when neglect is excusable, [courts] conduct the equitable analysis

5   specified in *Pioneer* [507 U.S. 380] by examining 'at least four factors: (1) the danger of

6   prejudice to the opposing party; (2) the length of the delay and its potential impact on the

7   proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith.'"

8   *Lemoge*, 587 F.3d at 1192 (quoting *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1223-24 (9th

9   Cir. 2000)).  "The determination of whether neglect is excusable 'is at bottom an equitable one,

10  taking account of all relevant circumstances surrounding the party's omission.'" *Lemoge*, 587

11  F.3d at 1192 (quoting *Pioneer*, 507 U.S. at 395).

12        **A.      Prejudice to the opposing party**

13         "Prejudice requires greater harm than simply that relief would delay resolution of the

14  case." *Lemoge*, 587 F.3d at 1196 (citing *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691,

15  701 (9th Cir. 2001)).  Plaintiff does not argue that granting the instant motions would cause it

16  undue prejudice.

17        **B.      Length of the delay**

18         Fed. R. Civ. P 60(c) requires that a Rule 60(b)(1) motion be made "within a reasonable

19  time" and "no more than a year after the entry of the judgment or order or the date of the

20  proceeding."  "'What constitutes 'reasonable time' depends upon the facts of each case, taking

21  into consideration the interest in finality, the reason for delay, the practical ability of the litigant

22  to learn earlier of the grounds relied upon, and prejudice to the other parties.'" *Lemoge*, 587 F.3d

23  at 1196-1197 (quoting *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981) (per curiam)).

24  Here, Oblon moved to vacate the order granting summary judgment within fourteen days, and

25  Patel filed his motion to vacate within thirty days.  Assuming that Moving Defendants could

26  show excusable neglect, such minimal delays would be reasonable.

27  //

28  //

4

1

      **C.**    **Reason for the delay**

2        Analysis of the reason for a delay includes "whether it was within the reasonable control

3 of the movant." *Pioneer*, 507 U.S. at 395.  Patel claims that he was unable to participate in this

4 action because he was in Gujarat, India between September 21, 2009 and April 2, 2010 and had

5 no knowledge of "the court proceedings". (Patel Decl. ¶¶ 4-5.)  However, though he may not

6 have known specifically of Plaintiff's motion for summary judgment, Patel obviously knew that

7 this action was pending, as he retained Manatt to represent him.  He does not provide any

8 explanation as to why he left the country for such a lengthy period of time without making

9 provisions for receiving communications regarding the action.  *See Feeney v. AT&E, Inc.*, 472

10 F.3d 560, 563 (8th Cir. 2006) (concluding that a defendant who "[failed] to make adequate plans

11 to receive his mail for two months, at a time when he was a defendant in a pending legal

12 proceeding . . . . was careless to the point of indifference," and that such indifference could not

13 serve as the basis for "excusable neglect" pursuant to Rule 60(b)(1)).  Moreover, even accepting

14 his factual assertions, Patel returned from India on April 2, 2009.  The hearing on Plaintiff's

15 motion for summary judgment was scheduled for April 16, 2009.  Patel does not explain why at a

16 minimum he did not request additional time to respond to the motion.

17        Oblon asserts that he was unable to participate in this action because of the combined

18 effects of an injury and the medication that was prescribed as a result of that injury.  (Oblon Decl.

19 ¶¶ 4-12).  Oblon states that he was effectively bedridden, (*id.* at ¶ 6), that he received physical

20 therapy two to three times per week, (*id.* at ¶ 7), that he was required to use a back brace

21 whenever he was standing, (*id.*), that he received a number of injections in his back to reduce the

22 pain, (*id*. at ¶ 10), and that he was prescribed a number of medications that caused the loss of

23 concentration, nausea, restlessness, lack of sleep, irritability, blurry vision, and constipation, (*id.*

24 at ¶ 9).  While his medical condition obviously was serious, Oblon does not claim that he was

25 unaware of the  motion for summary judgment, nor does he explain why at a minimum he did not

26 inform the Court of his situation.  As noted previously, Oblon acknowledged at the hearing that

27 he received an email from Plaintiff's counsel in April 2010.  Plaintiff's counsel represented – and

28 Oblon did not dispute – that the RFAs and summary judgment papers also were emailed to

1  Moving Defendants at the email addresses provided by Manatt.  Oblon does not explain how it is

2  that he could receive the email from counsel in April 2010 but not other legal papers sent to the

3  same address.  Oblon does not assert that his ability to access his email or regular mail was

4  limited by his medical condition or other factors outside of his reasonable control.  To the

5  contrary, Oblon's ability to travel to physical therapy sessions suggests that he was able to check

6  email and draft letters even while he was suffering from his injury.

7          Moving Defendants also contend that they believed that the instant case was stayed as a

8  result of Devonshire Metals' bankruptcy proceeding.  Such a belief was unreasonable.

9  Devonshire Metals entered bankruptcy in September 2009.  Defendants retained separate counsel

10 for this action presumably because they knew that they needed to do so notwithstanding the

11 bankruptcy of the corporation.  Manatt withdrew from representing Defendants not because the

12 instant case had been stayed, but apparently because of a dispute over the legal fees.  Finally,

13 Moving Defendants assert that service of the RFAs and the motion for summary judgment was

14 improper. While Plaintiff did mail papers to the last known address for Devonshire Metals,

15 Oblon and Patel made no effort to comply with Civil L.R. 3-11, which requires a party to inform

16 the Court and the other parties if the party's address changes while the action is pending.  Nor do

17 Moving Defendants explain how they did not receive or why they did not respond to the email

18 versions of Plaintiff's moving papers.

19          **D.     Lack of bad faith**

20          Though Oblon and Patel obviously could have handled this matter more effectively, there

21 is no evidence that their actions are the result of "deviousness or willfulness".  *See Lemoge*, 587

22 F.3d at 1197 (quoting *Laurino v. Syringa Gen. Hosp.*, 279 F.3d 750, 753 (9th Cir. 2002)).

23                                **III.  CONCLUSION**

24          While the delay was not unreasonable and there is no evidence of undue prejudice or bad

25 faith, Moving Defendants have failed to show that their neglect was excusable under Rule

26 60(b)(1).  It is clear that they  knew of the instant action and that it was proceeding despite the

27 bankruptcy of Devonshire Metals.  They do not offer a credible explanation as to why they did

28 not receive emails from Plaintiff containing the RFAs and the summary judgment papers or why

6

1  they did not inform the Court of their change of address or circumstances.  Accordingly, the

2  instant motions will be denied.[5]

3

4  IT IS SO ORDERED.

5

6  DATED:  7/6/10                                                _____

7                                                               JEREMY FOGEL
                                                                United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  _____

26      [5]  Defendants counterclaimed for breach of contract, breach of the covenant of good faith
    and fair dealing, and fraud in connection with the same transactions identified in Plaintiff's
27  motion for summary judgment.  The grant of Plaintiff's motion for summary judgment as to these
    transactions precludes Defendants' counterclaims.  Accordingly, Defendants' counterclaims will
28  be dismissed.

7